```
                    United States District Court
                     District of Massachusetts
```

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Government, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 16-10043-NMG |
| **JOSEPH G. RACHAL,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Joseph Rachal ("Rachal" or "defendant") has been indicted on charges of bank robbery, 18 U.S.C. §§ 2113(a) and (d), using a firearm while committing a crime of violence, 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  Currently before the Court is Rachal's motion to suppress evidence obtained during a seizure and search of his person that occurred on November 19, 2015. For the reasons that follow, the motion will be denied.

**I.   Background**

The government and defendant disagree on exactly what happened on the day in question.  The government relies on police reports for its description of the facts.  According to the government, a masked person ("the robber") went into a branch of the TD bank located at the corner of Market Street and

Surrey Street in Brighton, Massachusetts at about 4:51 P.M. on November 19, 2015. The robber purportedly told two tellers to give him money at gun point, placed the money in a black bag and left.

Two be-on-the-lookout ("BOLO") alerts were circulated to police officers moments later. The first reported that "a male wearing a dark brown mask" had robbed the TD Bank and the second described the perpetrator as a "short black male . . . wearing a tan jacket [and] a green hat" who "exited the bank onto Surrey Street".

After the BOLO alerts, Boston police officers headed to the area around the bank. One unit turned onto Bennett Street which is a block away from the Bank and parallel to Surrey Street. In the government's version of events, an officer from that unit observed a person hiding behind a parked car with a dark jacket and a bag. The officers then got out of their vehicle and identified themselves as the police. The person behind the car ran away from the officers. They were able to identify the individual as a white male and chased him, repeatedly identifying themselves as the police and telling him to stop. The individual purportedly stopped and turned toward the police in a combative manner and the officers gained control of him after a violent struggle.

Officers identified the individual as defendant Rachal and secured and frisked him. He was wearing a dark jacket, tan pants and a black mask around his neck. During the frisk the officers felt a hard object on his belt which was a scanner set to a Boston Police Department radio frequency. An officer picked up the bag that Rachal had been carrying, felt the outside, identified a hard object that he believed might be a firearm, opened the bag and found a black Glock nine millimeter firearm and ammunition. The officers also found a face mask, gloves and currency matching the amount stolen from the bank.

Rachal's version of events commence with him about to cross Market Street, not hiding behind a car. Before he crossed the street, Rachal says he saw police vehicles with flashing lights heading toward him "at a high rate of speed". He "jog[ged] across the street . . . [to] clear the street" prior to the arrival of the police cruisers. After that, he was "tackled by multiple individuals". He alleges that people "beat him" and he "lost consciousness" and was under arrest when he regained consciousness. Rachal's report mentions nothing about police officers on foot identifying themselves, telling him to stop or chasing him.

In February, 2016, a grand jury indicted Rachal and in August, 2016, he moved to suppress the evidence from the seizure

and ensuing search that occurred on November 19, 2015. That motion is the subject of this memorandum.

## II. Motion to Suppress

Defendant seeks to suppress all fruits of the search. According to defendant, the evidence should be suppressed because the seizure was a de facto arrest without probable cause or, alternatively, the police lacked reasonable suspicion to justify a Terry stop. The government opposes both grounds for suppression and contends that defendant has not demonstrated that material facts are in dispute and thus there is no need for an evidentiary hearing.

### A.   De Facto Arrest and Probable Cause

#### 1. Legal Standard

The Fourth Amendment governs the seizure of a person by law enforcement officers. United States v. Chaney, 647 F.3d 401, 408 (1st Cir. 2011). A seizure that rises to the level of a warrantless arrest, whether de facto or formal, is permissible only if it is supported by probable cause. Id.

To determine whether a seizure is a de facto arrest, courts analyze whether a reasonable person would perceive the event as an arrest based on the totality of the circumstances. Id. at 409. Factors to consider include whether the individual was physically restrained or stopped for longer than required to verify or repudiate reasonable suspicion, the use of handcuffs,

and the existence of an instruction to stay in a certain location. <u>Morelli</u> v. <u>Webster</u>, 552 F.3d 12, 20–21 (1st Cir. 2009) (citations omitted).

The probable cause standard is distinct from the "more onerous standard of proof beyond a reasonable doubt." <u>Id.</u> at 21. Probable cause exists if,

> at the time of arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that [the suspect] had committed or was committing an offense.

<u>United States</u> v. <u>Bizier</u>, 111 F.3d 214, 217 (1st Cir. 1997) (internal quotation and citation omitted). The "totality of the circumstances" is considered for the probable cause determination and probable cause can be shown by a "tightly forged chain of circumstances" with "a number of links." <u>United States</u> v. <u>Maguire</u>, 918 F.2d 254, 258 (1st Cir. 1990).

If an arrest is validly based on probable cause, then law enforcement officers are permitted to conduct a search incident to the arrest in "the area within [the arrestee's] immediate control." <u>Arizona</u> v. <u>Gant</u>, 556 U.S. 332, 339 (2009) (quoting <u>Chimel</u> v. <u>California</u>, 395 U.S. 752, 763 (1969)).

### 2. Application

The seizure of defendant was a de facto arrest. According to the government, the officers told defendant to stop several times. They agree that defendant was physically restrained and

the government states that officers "gain[ed] control of" and "secured" him. Those factors suffice to show that a reasonable individual would have perceived the event as an arrest. Morelli, 552 F.3d at 20-21.

Even taking defendant's version of the facts into account, when the "entire, tightly forged chain of circumstances" is considered, there is sufficient evidence to establish probable cause for the arrest. See Maguire, 918 F.2d at 258. A number of events support such a finding.

First, law enforcement units came to the scene in response to the two BOLO reports of a bank robbery.

Second, moments after the BOLOs, officers saw defendant, who was carrying a bag, one block away from the Bank on Bennett Street which is parallel to Surrey Street, the street identified in the BOLO. While defendant states that he was about to cross the street and the government contends that he was crouched behind a vehicle, defendant does not contest the fact that he was carrying a bag and was within one block of the bank that had just been robbed.

Third, the officers got out of their vehicle and identified themselves to defendant as the Boston police whereupon defendant ran away. According to the officers they chased defendant, repeatedly identifying themselves as the police and telling him to stop. Although defendant claims not to have seen or heard

-6-

the officers, he admits that he jogged across the street in front of oncoming police cars with flashing lights.

Because probable cause is established when law enforcement officers have information that would enable a "prudent person" to believe that a crime had been committed, Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992), it is irrelevant that defendant does not in his affidavit mention officers approaching him on foot or yelling at him.  From the officers' perspective, when they identified themselves as police to an individual carrying a bag a block away from a bank that had just been robbed and told him to stop, he immediately ran the other direction.

The "close proximity" of defendant to the robbed bank from which the robber had just fled, the appearance of the bag that he was carrying, his failure to stop after officers repeatedly identified themselves and ordered him to do so and his somewhat implausible decision to run in front of oncoming police cars that were approaching at a high speed all support a finding that there was probable cause that defendant had committed a crime. See Maguire, 918 F.2d at 258.

Defendant asserts that the mismatch between him (a white male) and the second BOLO report that the robber was a black male cuts against a finding of probable cause.  The two BOLO reports indicate, however, that the description of the suspect

was subject to updates and the first report that the perpetrator was wearing a dark mask made it conceivable that the suspect had been incorrectly identified as a black male.  At any rate, the sum of the events supports a finding of probable cause even though defendant did not precisely match the description in the second BOLO report.

Accordingly, the search of the bag on the ground next to defendant was a permissible search incident to an arrest. Gant, 556 U.S. at 339.

### B.   Reasonable Suspicion and Terry Stop

Defendant contends that, if there was no de facto arrest, there was insufficient evidence to support a Terry stop.  Even if that contention were not rendered irrelevant by the Court's finding that there was a de facto arrest, it would not succeed. Defendant's proximity to the robbery, his failure to stop when police repeatedly identified themselves and ordered him to do so and "jogging" away from the police more than satisfy the reasonable and articulable suspicion required for a Terry stop. Illinois v. Wardlow, 528 U.S. 119, 124–25 (2000).

### C.   Evidentiary Hearing

A hearing is required if the proponent demonstrates that "material facts are in doubt or dispute" and they cannot be decided based on the record. United States v. Jimenez, 419 F.3d 34, 42 (1st Cir. 2005).  To be entitled to an evidentiary

hearing, a defendant must "allege facts sufficiently definite, specific, detailed, and nonconjectural" from which the court may conclude that a substantial claim is presented. United States v. Brown, 621 F.3d 48, 57 (1st Cir. 2010)(quotation and citation omitted).  A defendant's affidavit alone is not cause for a hearing if it contains conclusory allegations that are "unsupported by any offer of proof." United States v. Southard, 700 F.2d 1, 10 (1st Cir. 1983).

The only pertinent factual dispute between the parties is that, according to the government, defendant was initially "crouched down and hiding behind an SUV" while defendant states that he was "preparing to cross" the street.  Defendant does not dispute the government's assertions that 1) he was a block away from the bank where the robbery occurred, 2) he was carrying a bag, 3) the officers announced their presence and told him to stop and 4) he jogged across the street, away from the officers, despite the oncoming rush of police cruisers.  Consequently, even taking defendant's version of events into account, the undisputed facts suffice to show probable case and an evidentiary hearing is not warranted.

**ORDER**

In accordance with the foregoing, defendant's motion to suppress (Docket No. 22) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 3, 2016