UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA      )
                              )
        v.                    )      Criminal No. 16-CR-10043-NMG
                              )
JOSEPH G. RACHAL,             )
        Defendant.            )
```

## GOVERNMENT'S SENTENCING MEMORANDUM

On Thursday April 27, 2017, following a five-day jury trial, Joseph G. Rachal ("Rachal") was convicted of: armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); using a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c); and being a previously convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922.

For the reasons stated herein, the government believes that a sentence of 111 months' imprisonment, the high-end of the advisory range, is an appropriate disposition in this matter. It is clear from the information set forth in the PSR that the defendant is an unrepentant violent criminal.

The government also requests that Rachal be placed on supervised release for a period of five years, be ordered to pay restitution in the amount of $2,397.00 to the bank listed in the indictment, and be ordered to pay a special assessment of $300.00.

I.   **FACTS**

The Government maintains the following facts were proven during trial and remain uncontested in the PSR.

On November 19, 2015, a masked individual, later determined to be Rachal, entered a branch of the TD Bank located at 391 Market Street, Brighton, MA.  Rachal was wearing a blue baseball hat, tan jacket, tan pants, black hooded jacket and black and gray gloves.  Additionally, as Rachal entered the bank he was carrying a black nylon bag.  Rachal approached a teller ("Teller #1"), removed what appeared to be a semi-automatic pistol from the black nylon bag he was carrying, pointed the firearm at the teller and stated, in substance, "Give me the money I'm not playing."  Rachal then approached a second teller ("Teller #2"), pointed the firearm at her and demanded money. As Teller #2 was retrieving money from her drawer, Rachal started banging the firearm on the counter.  Teller #2 then handed Rachal money from her drawer.  Rachal returned to Teller #1, pointed the firearm at him again and stated, in substance, "Give me the money I'm not playing."  Teller #1 handed Rachal money from his drawer. Rachal then took the money, placed it into the black nylon bag he was carrying, and exited the bank.

Within moments of the robbery, a be-on-the-lookout alert ("BOLO") was issued by law enforcement.  The first BOLO described the robber as a male wearing a brown mask and carrying

a black firearm.  A second BOLO was issued shortly thereafter

that additionally described the robber as a short black male,

dark skin, wearing a tan jacket, a green hat, and carrying a

firearm.  This second BOLO also stated that the robber had

exited the bank onto Surrey Street.

Minutes after receiving the first and second BOLOs, Boston

Police officers responded to the area of the TD Bank.  TD Bank

is located on Market Street as it intersects with Surrey Street.

The bank has a parking lot which accesses both Surrey Street and

Market Street.  Some of the responding units headed directly to

the bank, while other units headed up Market Street.  One of the

units turned onto Bennett Street.  Bennett Street is one block

from the TD Bank and runs parallel to Surrey Street.  As the

unit turned onto Bennett Street, one of the officers noted an

individual, later identified as Rachal, crouched down and hiding

behind a parked SUV.  Rachal was wearing a dark colored jacket

and carrying a dark colored bag.

Upon seeing Rachal, the officers exited their vehicle and

identified themselves as Boston Police.  The officers stated

that Rachal looked in their direction, got up from his crouched

position, and started running towards Market Street.  As he

turned and ran up Market Street, the officers noted that he was

a white male and that he was carrying a black bag.  The officers

chased Rachal, continually identifying themselves as Boston

3

Police, and yelled for Rachal to stop.  At one point during the pursuit, Rachal stopped and assumed a "bladed stance."  At this time, the pursuing officers were able to catch and gain control of Rachal after a violent struggle.  Throughout the struggle, Rachal refused to show his hands and kept them tucked under his body.

Rachal was then secured and pat-frisked.  The officers felt a hard object attached to Rachal's pants.  That object proved to be a UNIDEN Bearcat scanner with earbuds.  The officers removed the scanner and noted that it was tuned to a Boston Police Department radio frequency (Channel 5).[1]  At this time, Rachal was wearing a dark colored fleece jacket, a black North Face hooded jacket, a pair of tan pants, and sneakers.

The black nylon bag that Rachal had been observed carrying fell to the ground during the struggle.  An officer picked up the bag and noted that it felt heavy.  The officer felt the outside of the bag and detected a hard object inside the bag. Believing that the object might be a firearm, the officer opened the bag and it proved to contain the following:

    1.   a full size black Glock 9mm firearm with obliterated
         serial numbers containing one live chambered round and
         a magazine containing 14 additional live
         rounds of ammunition;
    2.   one loose magazine containing 15 rounds of live

---

[1] During trial testimony, both BPD officers involved with the arrest of Rachal testified that they were monitoring channel #5.

ammunition;
3.    one rubber face mask having the appearance of dark-colored skin;
4.    one pair of black and gray gloves;
5.    one tan jacket;
6.    three clear plastic bags;
7.    one blue baseball hat; and
8.    $2,397.00 in U.S. currency.

Rachal was arrested and charged with the armed robbery of the TD Bank and being a felon in possession of a firearm.

Following the robbery, the law enforcement interviewed the two tellers who had been robbed.  The tellers both described Rachal as a male wearing a dark colored mask.  Both tellers stated that they observed him carrying a black nylon bag during the robbery and that he brandished a black firearm.

Bank surveillance cameras were operating and functioning on the date of the robbery.  The cameras captured video of Rachal as he entered the bank, robbed the tellers, and then exited the bank.  Throughout the robbery Rachal is observed wearing a dark rubber mask, dark gloves, a tan jacket with a dark hooded sweatshirt underneath, tan pants, and a blue baseball hat.  Rachal is also observed brandishing a black semi-automatic firearm and carrying a black nylon bag.  All of these items are consistent with the items found either on Rachal's person or in the bag he was observed carrying during his escape.  The amount of money recovered in the bag was $2,397.00, the exact amount taken in the robbery.

Once at the Boston Police Department station, the clothing Rachal was wearing was taken into custody.  The clothing consisted of a black fleece, a black hooded jacket, a black neck warmer with eye-holes cut out, tan pants, and gray sneakers.

A post-robbery audit determined that the robber took $2,397.00 in United States currency.  The deposits of the TD Bank are insured by the FDIC.

## II.  GUIDELINE ANALYSIS

### A. Offense Level Computation

The government agrees with Probation's conclusions that Rachal's Total Offense Level is 22. [PSR ¶ 32]

### B. Criminal History

The government agrees with Probation's conclusions that Rachal, with a criminal history score of zero, is in criminal history category I. [PSR ¶ 41]

### C. Guideline Computation

The government agrees with Probation that as to Counts 1&3, based on a total offense level of 22 and a criminal history category of I, the guideline imprisonment range is 41 to 51 months' imprisonment.  However, the government maintains that Rachal "brandished" the firearm during the commission of the aforementioned robbery.  Consistent with the ruling in *Alleyne v. United States*, 133 S. Ct. 2151(S. Ct. 2013), the government concedes that this court must impose a mandatory minimum

sentence of 60 months' imprisonment.  The government agrees with Probation that this term of imprisonment must be served consecutively to any other counts term of imprisonment.

## III. **ARGUMENT**

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

Rachal, age 65, is a violent and dangerous criminal. Rachal's criminal career started at the age of 15 and has continued until this most recent offense.  As evidenced by his criminal record, Rachal has been unable and unwilling to refrain from criminal behavior throughout his life.  As outlined in the PSR, Rachal has been convicted of many violent crimes including murder/manslaughter, armed robbery, assault with a dangerous weapon, possession of a firearm without a permit, armed assault to kill, escape, possession of a license with a false name, possession of a class B controlled substance, felon in

7

possession of a firearm in commerce, and operating under the influence of liquor.  Moreover, Rachal has been sentenced to prison five times with sentences ranging from 2 years to life, reflecting his unwillingness to reform his behavior.

Rachal's criminal record clearly demonstrates that he is a dangerous individual who has no intention of becoming a law-abiding citizen.  He is a career criminal with no regard for societal norms and as such, his behavior can no longer be tolerated.  The government therefore believes that the appropriate sentence is a one at the high-end of the guidelines, 111 months' imprisonment, to be followed by five years of supervised release.

## A. DEFENDANT IS A VIOLENT CRIMINAL

Rachal is a dangerous lifelong criminal.  He began committing violent crimes in his teenage years and his life has since then continued to revolve around criminal activity. Despite serving prior time in prison, Rachal has shown no signs of reforming his behavior, and his criminal activity would have likely continued had he not been caught.  He has previously been convicted of multiple violent offenses as outlined in his PSR, to wit:

**PSR ¶ 35:** In 1968, Rachal, age 17, was charged with murder.[2]
According to reports of the Brookline Police Department, on June
20, 1968, Rachal and others stole a motor vehicle in Brookline.
The owner of the vehicle, Walter B. Howe, age 23 and a recent
graduate of Northeastern University, observed the vehicle's
theft.  Howe and others pursued Rachal and confronted him.  At
that time, Rachal fired a .22 caliber into Howe's chest
resulting in Howe's immediate death.

Rachal was arrested a short time later and charged with the
killing.  On May 14, 1969, Rachal, at the close of the
government's case, pled guilty to so much of the indictment that
alleged murder in the second degree.  Rachal was sentenced to
life imprisonment.  As Rachal was being escorted from the Court,
Rachal escaped from custody.  Rachal was arrested a short time
later.

On May 14, 1979, Rachal's plea was vacated and he was
granted a new trial.  On September 28, 1979, Rachal pled to a
lesser charge of manslaughter.[3]  Rachal was sentenced to "time

---

[2] See Government Exhibit #1 which contains the following:
    1A: Norfolk Superior Court Docket
    1B: Brookline PD Reports
    1C: Boston Globe Article
    1D: Record American Article
    1E: *In Re Rachal,* 515 N.E. 2d 169 (Mass App. Ct. 1987).
[3] See Government's Exhibit #1E, *In Re Rachael*, 515 N.E.2d
169(Mass App. Ct. 1987).

served."  The time served sentence resulted in Rachal being

confined approximately 11 years and 6 months.

**PSR ¶ 36:** In 1974 while out on furlough for the

aforementioned murder conviction, Rachal was convicted in

Middlesex Superior Court of armed robbery, assault with a

dangerous weapon, possession of a firearm without a permit, and

armed assault to kill.  According to court records and the PSR,

he received a sentence of 7-10 years' committed.  According to

Probation, that sentence was revoked and he received an

additional sentence of 3-5 years' committed. [4]

**PSR ¶ 37:** In 1984, Rachal, while serving the aforementioned

sentence in PSR ¶ 36, escaped from the MCI Walpole Pre-Release

Center.  Rachal was not captured until three years later.

Rachal was found guilty of escape and received a sentence of 3-5

years committed at MCI Cedar Junction. [5]

**PSR ¶ 38:** In 1986, Rachal was convicted of being a

previously convicted felon in possession of a firearm (U.S.

District Court, District of Massachusetts, Docket No.: 85-CR-

---

[4]  See Government's Exhibit #1E, *In Re Rachael*, 515 N.E.2d
169(Mass App. Ct. 1987).

[5]  See Government's Exhibit #1E, *In Re Rachael*, 515 N.E.2d
169(Mass App. Ct. 1987).

19501).  In that matter, Rachal received a sentence of 2 years committed.

**PSR ¶ 39:** In 1991, Rachal was convicted of operating under the influence of liquor.  Rachal was sentenced to a year of probation.

### B. RACHAL'S NUMEROUS VICTIMS

Throughout his criminal career, Rachal left a trail of numerous victims.  Rachal's first victim, Walter B. Howe, was only 23 years old when he was murdered.  Howe had graduated from Northeastern University two days prior to his senseless murder, which took place during a motor vehicle theft.  Upon Rachal's release, he continued a life of violence with convictions including armed robbery, assault with a dangerous weapon, and armed assault to kill. Moreover, he continued to impact and endanger the lives of his victims, for which he showed no remorse.  During his most recent offense, Rachal waved and pointed a firearm directly at the bank tellers while yelling at them.  He is responsible for the incredible fear and trauma that the tellers and bank customers faced during the robbery. Alongside the monetary loss the bank suffered, the individuals who witnessed Rachal's forceful acts will suffer greatly from this traumatic experience.

### C. RACHAL'S REFUSAL TO REHABILITATE

Throughout his life, Rachal has continuously displayed an

absolute disregard for the law and societal norms.  Rachal has

been sentenced to multiple extended periods of incarceration,

none of which seem to curb his violent criminal activity.

    As set forth in the PSR, court records, and other

documents[6], Rachal was convicted of 2nd Degree Murder at the age

of 17 and received a life sentence.  While on furlough for that

offense, he committed an armed robbery (PSR ¶ 36).  While

serving his sentence for the armed robbery, he escaped and was

at large for three-years.  Since then, Rachal has committed

numerous other offenses including the present ones.  He is

absolutely incapable of refraining from criminal activity and

despite having served lengthy sentences, it is the government's

belief that Rachal will continue to commit crimes.

    Rachal's record is replete with violent crimes and shocking

instances of re-offending.  Every time Rachal has been given the

opportunity, he commits more violent crimes.  His record of

escaping, and committing crimes while on release are evidence

that he is absolutely incapable of abiding by the law.  As

evidenced by the instant offense, Rachal continues to commit

crimes despite countless opportunities to turn his life around.

---

[6] See Government Exhibit #1.

**D. THE INSTANT OFFENSES**

Bank robbery is one of the most violent crimes the courts encounter.  The crime has an immeasurable impact on the bank, its employees, and its customers.  This robbery was not a random or isolated event.  It involved cold-hearted calculation, detailed planning, and a complete disregard for the victim tellers or bank customers.

As evidenced at trial, the police recovered numerous items that reflect the careful and detailed planning that went into the robbery.  Rachal used a full size Glock 9mm firearm with obliterated serial numbers containing one live chambered round and a magazine containing 14 additional live rounds of ammunition.  In the surveillance video shown at trial, Rachal is clearly seen pointing this loaded firearm directly at the bank tellers and banging it on the table while demanding money.  Additionally, Rachal had one loose magazine containing 15 rounds of live ammunition and a police scanner.   Moreover, Rachal wore a mask as to conceal his identity and appear to be that of a black male.  This was done with the sole intention of offsetting the police.  The items described above are not used by someone who is committing a random act, they are used by someone who diligently and consciously planned a violent armed robbery.  One can only speculate why Rachal felt the need to have a loaded firearm with an additional magazine on him during the robbery.

13

Had it not been for the officer's quick response, it is likely that an even more dangerous crime could have occurred.

This was an extremely violent and premeditated armed robbery.  The facts in this case warrant a severe sentence with an extended period of incarceration.

## IV.  CONCLUSION

For the reasons stated herein, the government requests this Court impose a sentence at the high-end of the guidelines, 111 months' imprisonment.  Following the completion of this sentence the government requests that Rachal be on supervised release for a period of five years, be ordered to pay restitution to the TD Bank in the amount of $2,397, a mandatory special assessment of $100, and forfeiture as set-forth in the indictment.

This is a just and appropriate sentence as dictated by the facts and circumstances of this case and Rachal's life-long criminal history.


                              Respectfully submitted,


                              WILLIAM D. WEINREB
                              Acting United States Attorney

                         By:  /s/ Kenneth G. Shine
                              KENNETH G. SHINE
                              Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>*/s/ Kenneth G. Shine*</u>
KENNETH G. SHINE
Assistant U.S. Attorney